**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

Case No. 04-32256

TERRY JONES

        Debtor


CATHERINE SMITH BOWLING,
BEVERLY K. ANDERSON,
LYNN CURTIS ANDERSON, and
KIMBERLY K. ANDERSON

        Plaintiffs

       v.                                           Adv. Proc. No. 10-3045

TERRY JONES

        Defendant

**MEMORANDUM ON
<u>MOTION FOR SUMMARY JUDGMENT</u>**

**APPEARANCES:**    JENKINS & JENKINS ATTYS., PLLC
                                 Michael H. Fitzpatrick, Esq.
                                 2121 First Tennessee Plaza
                                 800 South Gay Street
                                 Knoxville, Tennessee 37929
                                 Attorneys for the Plaintiffs

                                 ROGER A. MILLER, ESQ.
                                 407 Cullom Street
                                 Clinton, Tennessee 37716
                                 Attorney for the Defendant


**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

The Plaintiffs filed the Complaint commencing this adversary proceeding, entitled "Catherine Smith Bowling, Beverly K. Anderson, Lynn Curtis Anderson and Kimberly K. Anderson Complaint Against Terry Jones" (Complaint), on June 7, 2010, asking the court for a determination that a Judgment awarded them against the Defendant in the amount of $102,485.47 by the Circuit Court for Anderson County, Tennessee on July 27, 2007, and affirmed by the Tennessee Court of Appeals on May 16, 2008, is res judicata and nondischargeable pursuant to 11 U.S.C. § 523(a)(2), (3)(A), (4), and/or (6) (2006). The Defendant filed his Answer to Complaint on July 13, 2010, denying that the Plaintiffs are entitled to a determination of nondischargeability.

Presently before the court is the Catherine Smith Bowling, Beverly K. Anderson, Lynn Curtis Anderson and Kimberly K. Anderson Motion for Summary Judgment (Motion for Summary Judgment) filed by the Plaintiffs on November 15, 2010, accompanied by the Catherine Smith Bowling, Beverly K. Anderson, Lynn Curtis Anderson and Kimberly K. Anderson Statement of Undisputed Material Facts in Support of Their Motion for Summary Judgment (Statement of Undisputed Material Facts) and a memorandum of law as required by E.D. Tenn. LBR 7056-1. Attached as exhibits to the Statement of Undisputed Material Facts and additionally relied upon by the Plaintiffs are (1) the Complaint filed in July 2004 against the Defendant by the Plaintiffs in the Anderson County Circuit Court, initiating the action styled *Catherine Smith Bowling, et al. v. Todd Jones, et al.*, Case No. A4LA0513; (2) the Judgment entered on June 27, 2007, in the Anderson County Circuit Court; (3) the Order of Corrected Judgment entered on July 27, 2007, in the Anderson County Circuit Court correcting a clerical mistake in the Judgment; and (4) the Judgment and Opinion entered on May 16, 2008, by the Tennessee Court of Appeals in Case

No. E2007-01581-COA-R3-CV.  The Plaintiffs also rely upon the Lynn Curtis Anderson Affidavit in Support of Plaintiffs' Motion for Summary Judgment (Anderson Affidavit).

On December 6, 2010, the Defendant filed his Response to Motion for Summary Judgment, supported by a memorandum of law and his Response to Plaintiff's [sic] Statement of Undisputed Material Facts for Their Motion for Summary Judgment (Response to Statement of Undisputed Material Facts) filed on December 7, 2010.  The Defendant did not file an affidavit to counter the Anderson Affidavit.

This is a core proceeding.  28 U.S.C. § 157(b)(2)(I) (2006).

I

The following facts are not in dispute.  In the fall of 2002, the Plaintiffs entered into a contract or agreement with the Defendant, Todd Jones, and Jerry Jones, d/b/a Jones Brothers Construction (collectively, Jones brothers ), for the construction of a home for Lynn Curtis Anderson and Beverly Anderson (the Andersons) on real property owned by Ms. Bowling located at 541 Brooks Gap Road in Anderson County, Tennessee.[1]  STMT. OF UNDISP. MAT. FACTS at ¶¶ 1-2; RESP. TO STMT. OF UNDISP. MAT. FACTS at ¶¶ 1-2; ANDERSON AFF. at ¶¶ 5-6.  Under the terms of the agreement, the purchase price was $125,864.70, to be paid in installments of $30,000.00 on the October 1, 2002 commencement date, two intermediate payments of $17,000.00 and $40,000.00, respectively, contingent upon specific finished portions of the house, and a final payment of

---

[1] The Plaintiffs refer to a "contract," while the Defendant refers to an "agreement."

$38,864.70. STMT. OF UNDISP. MAT. FACTS at ¶ 3;[2] RESP. TO STMT. OF UNDISP. MAT. FACTS at ¶ 3; ANDERSON AFF. at ¶ 7. At the time of the contract, the Jones brothers were not bonded. STMT. OF UNDISP. MAT. FACTS at ¶ 5; RESP. TO STMT. OF UNDISP. MAT. FACTS at ¶ 5; ANDERSON AFF. at ¶ 9.

The initial $30,000.00 was paid by the Plaintiffs to the Jones brothers, and construction began, as agreed, on October 1, 2002, and continued through the fall, slowing in December due to inclement weather and a death in the Jones family. STMT. OF UNDISP. MAT. FACTS at ¶ 6; RESP. TO STMT. OF UNDISP. MAT. FACTS at ¶ 6;[3] ANDERSON AFF. at ¶ 11. Draws of $6,000.00 and $18,000.00 were paid to the Jones brothers in December 2002 and January 2003, respectively. STMT. OF UNDISP. MAT. FACTS at ¶ 6; RESP. TO STMT. OF UNDISP. MAT. FACTS at ¶ 6;[4] ANDERSON AFF. at ¶ 11. Disputes arose between the parties over the construction, culminating with the Jones brothers ceasing work on the home. STMT. OF UNDISP. MAT. FACTS at ¶ 7; RESP. TO STMT. OF UNDISP. MAT. FACTS at ¶ 7;[5] ANDERSON AFF. at ¶ 12. At that time, the Plaintiffs had paid a total of $95,485.47 for labor and materials. STMT. OF UNDISP. MAT. FACTS at ¶ 7; ANDERSON AFF. at ¶ 12.

On July 20, 2004, the Plaintiffs filed a civil action against the Jones brothers in the Circuit Court for Anderson County, Tennessee styled *Catherine Smith Bowling, et al. v. Todd Jones, et al.*, No. A4LA0513 (State Court Lawsuit) alleging, *inter alia*, structural defects, breach of contract, and

---

[2] The Defendant is deemed to have admitted these facts notwithstanding that he labeled his response as "Disputed" because he limits the dispute to a single fact. The court therefore deems the other facts set forth in this paragraph of the Plaintiffs' Statement of Undisputed Material Facts as admitted. Furthermore, these facts are attested to in the Anderson Affidavit which the Defendant has not rebutted.

[3] *See supra* n.2.

[4] *See supra* n.2.

[5] *See supra* n.2.

misrepresentation and seeking damages for negligent and intentional misrepresentation, negligence, gross negligence, consumer protection, and breach of contract warranty (State Court Complaint). STMT. OF UNDISP. MAT. FACTS EX. 1; COMPL. at ¶ 12; STMT. OF UNDISP. MAT. FACTS at ¶¶ 8-9; RESP. TO STMT. OF UNDISP. MAT. FACTS at ¶¶ 8-9; ANDERSON AFF. at ¶¶ 13-14.  As it specifically relates to the Tennessee Consumer Protection Act, the State Court Complaint avers that "the defendant [sic] has engaged in unfair and deceptive acts and practices as defined in Tennessee Code Annotated § 47-18-104, for which the plaintiffs are entitled to recover and [sic] attorney fees, costs and treble damages."  STMT. OF UNDISP. MAT. FACTS EX. 1.  The Jones brothers, through counsel, filed an answer and counterclaim to the State Court Complaint, denying the Plaintiffs' allegations and contending that the Plaintiffs had breached the parties' contract by refusing to pay the monies due under the contract and by firing them.  STMT. OF UNDISP. MAT. FACTS at ¶¶ 10-11; RESP. TO STMT. OF UNDISP. MAT. FACTS at ¶¶ 10-11; ANDERSON AFF. at ¶ 15.

Following a trial of the State Court Lawsuit held on January 26, 2007, the court entered a judgment in favor of the Plaintiffs on June 27, 2007, finding that the house was of no value in its present condition and that the Jones brothers had violated provisions of the Tennessee Consumer Protection Act, and awarded the Plaintiffs $95,485.47 for monies they had expended, $7,000.00 in punitive damages, and reasonable attorneys' fees (Judgment).  STMT. OF UNDISP. MAT. FACTS EX. 2; STMT. OF UNDISP. MAT. FACTS at ¶¶ 12, 19; RESP. TO STMT. OF UNDISP. MAT. FACTS at ¶¶ 12, 19; ANDERSON AFF. at ¶¶ 16-17.  The Jones brothers appealed the Judgment, raising the following issues: "1) Whether the evidence preponderates against a conclusion that the Jones brothers breached the contract because of defective workmanship; 2) Whether the evidence preponderates against the

5

conclusion that the Jones brothers breached the contract by abandonment; (3) Whether the Jones brothers were liable for the negligence of their subcontractors; and (4) Whether the trial court erred in its award of damages." STMT. OF UNDISP. MAT. FACTS EX. 4; STMT. OF UNDISP. MAT. FACTS at ¶¶ 13-14; RESP. TO STMT. OF UNDISP. MAT. FACTS at ¶¶ 13-14; ANDERSON AFF. at ¶ 20.

The Tennessee Court of Appeals filed its judgment and opinion on May 16, 2008, finding that the preponderance of the evidence supported the trial court's Judgment that the Jones brothers breached the contract by failing to construct the house in a workmanlike manner, that the Jones brothers breached the contract by abandonment, that the Jones brothers' contractual duty to construct the house in a workmanlike manner did not extend to their delegation of the work to third parties, and that the Plaintiffs were entitled to all damages awarded. STMT. OF UNDISP. MAT. FACTS EX. 4; STMT. OF UNDISP. MAT. FACTS at ¶¶ 15, 21; RESP. TO STMT. OF UNDISP. MAT. FACTS at ¶¶ 15, 21; ANDERSON AFF. at ¶ 22.

The Defendant and his spouse filed the Voluntary Petition commencing their joint Chapter 7 case on May 23, 2005, and they received a general discharge of their debts on September 16, 2005. The Defendant did not list the Plaintiffs and/or their claims in his statements and schedules, and they did not receive notice of his bankruptcy filing until after the deadline for filing complaints to determine the dischargeability of their debt had passed. COMPL. at ¶¶ 13, 15. The Defendant's case was reopened on April 30, 2010, and the Plaintiffs filed the Complaint initiating this adversary proceeding on June 7, 2010. Pursuant to the Pretrial Order entered on September 10, 2010, the issue before the court is whether the Judgment entered by the Anderson County Circuit Court on June 27, 2007, and affirmed by the Tennessee Court of Appeals on May 16, 2008, is nondischargeable under

6

§ 523(a)(2), (3)(A), (4), and/or (6). In their Motion for Summary Judgment, the Plaintiffs argue that the undisputed facts show that the Judgment is entitled to full faith and credit by the bankruptcy court, that the Defendant is collaterally estopped from re-litigating any of the issues raised, and that it is a nondischargeable obligation under 11 U.S.C. § 523(a)(2)(A). The Defendant disputes that the Plaintiffs are entitled to summary judgment, arguing that the Judgment does not establish that the elements necessary for a determination of nondischargeability under § 523(a)(2)(A) were raised in the State Court Complaint and it is, therefore, not subject to collateral estoppel.

## II

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, revised effective December 1, 2010, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law[,]" with the procedures concerning summary judgment now requiring the following:

> (1) ***Supporting Factual Positions***. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> (2) ***Objection That a Fact Is Not Supported by Admissible Evidence***. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> (3) ***Materials Not Cited***. The court need consider only the cited materials, but it may

consider other materials in the record.

(4) *Affidavits or Declarations*. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED. R. CIV. P. 56(c) (applicable in adversary proceedings by virtue of Rule 7056 of the Federal Rules of Bankruptcy Procedure).[6] When deciding a motion for summary judgment, the court does not weigh the evidence to determine the truth of the matter asserted but simply determines whether a genuine issue for trial exists, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986).

As movants, the Plaintiffs bear the burden of proving that, based upon the record presented to the court, there is no genuine dispute concerning any material fact, such that the claims or defenses alleged are factually unsupported, entitling them to judgment as a matter of law. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986); *Owens Corning v. Nat'l Union Fire Ins. Co.*, 257 F.3d 484, 491 (6th Cir. 2001). The burden then shifts to the Defendant, as the nonmoving party, to prove that there are genuine disputes of material fact for trial, although he may not rely solely upon allegations or denials contained in the pleadings, as reliance upon a "mere scintilla of evidence in support of the nonmoving party will not be sufficient." *Nye v. CSX Transp., Inc.*, 437 F.3d 556, 563 (6th Cir. 2006);

---

[6] Courts were authorized, "insofar as just and practicable," to apply the December 1, 2010 amendments to Rule 56 to all pending motions. *See* Apr. 28, 2010 Sup. Ct. Order. As set forth in the Notes of Advisory Committee on 2010 amendments, the standard for granting summary judgment has not changed, and "[t]he amendments will not affect continuing development of the decisional law construing and applying [that standard]." This court's Local Rule 7056-1, effective May 17, 2005, generally contains the same requirements mandated by Rule 56(c), as amended effective December 1, 2010. *See* E.D. Tenn. LBR 7056-1. Here, to the extent amended Rule 56(c) may be considered to impose requirements differing from those imposed by Local Rule 7056-1, the court has adhered to the procedure dictated by the Local Rule.

8

*see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986). The facts and all resulting inferences are viewed in a light most favorable to the nonmovant, with the court deciding whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 106 S. Ct. at 2512. Nevertheless; "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 106 S. Ct. at 1356 (citations omitted).

Having reviewed the Motion for Summary Judgment, the Statement of Undisputed Material Facts, the Response, the Response to Statement of Undisputed Material Facts, all supporting documents, and the pleadings, the court finds that, even taking the record in a light most favorable to the Defendant, there are no genuine disputes as to any material fact under which the Defendant can prove any of the defenses asserted. The Plaintiffs are therefore entitled to summary judgment, and the Judgment entered in the Anderson County Circuit Court on June 27, 2007, and affirmed by the Tennessee Court of Appeals on May 16, 2008, is nondischargeable and was not discharged on September 16, 2005.

### III

In support of their Motion for Summary Judgment, the Plaintiffs argue that, because re-litigation of the issues is precluded under the doctrine of collateral estoppel, they are entitled to a determination that the Judgment is nondischargeable. Collateral estoppel, or issue preclusion, is an "extension" of the doctrine of res judicata, and its purposes are to relieve the parties of multiple

9

lawsuits, conserve judicial resources, and promote finality by preventing inconsistent decisions. *Allen v. McCurry*, 101 S. Ct. 411, 415 (1980). It derives from 28 U.S.C. § 1738, which provides that "judicial proceedings . . . [of any State] shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . .[.]" 28 U.S.C. § 1738 (2006). Accordingly, federal courts must give state court judgments "the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered[,]" *Migra v. Warren City School District Board of Education*, 104 S. Ct. 892, 896 (1984); thus, if a claim or issue would be barred under state law, the judgment in question is given preclusive effect. *Marrese v. American Academy of Orthopaedic Surgeons*, 105 S. Ct. 1327, 1335 (1985); *Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 317 (6th Cir. 1997). Additionally, the Supreme Court has held that, although the bankruptcy court has exclusive jurisdiction over actions to determine dischargeability, if a state court, in the course of adjudicating state law questions, also determines factual issues with standards identical to those in § 523(a), collateral estoppel bars re-litigation of those issues by the bankruptcy court in § 523(a) actions. *Grogan v. Garner*, 111 S. Ct. 654, 658 n.11 (1991).

Under Tennessee law, collateral estoppel "bars the same parties or their privies from relitigating in a later proceeding legal or factual issues that were actually raised and necessarily determined in an earlier proceeding . . . [whereby] that determination is conclusive against the parties in subsequent proceedings[,]" *Mullins v. State*, 294 S.W.3d 529, 534 (Tenn. 2009), and it "applies to issues of law and to issues of fact." *Gibson v. Trant*, 58 S.W.3d 103, 113 (Tenn. 2001); *see also Booth v. Kirk*, 381 S.W.2d 312, 315 (Tenn. Ct. App. 1963) ("[M]aterial facts or questions, which

were in issue in a former action, and were there admitted or judicially determined, are conclusively settled by a judgment rendered therein, and . . . such facts or questions become res judicata and may not again be litigated in a subsequent action between the same parties.") (citation omitted). The party asserting collateral estoppel "has the burden of proving that the issue was, in fact, determined in a prior suit between the same parties and that the issue's determination was necessary to the judgment." *Dickerson v. Godfrey*, 825 S.W.2d 692, 695 (Tenn. 1992). In order to successfully prove collateral estoppel, the following must be demonstrated:

> (1) that the issue sought to be precluded is identical to an issue decided in an earlier proceeding; (2) that the issue sought to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding; (3) that the judgment in the earlier proceeding has become final; (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding; and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded.

*Mullins*, 294 S.W.3d at 535. The parties do not dispute that the Judgment is final. STMT. OF UNDISP. MAT. FACTS at ¶ 17; RESP. TO STMT. OF UNDISP. MAT. FACTS at ¶ 17. Additionally, there is no question that the Plaintiffs in this adversary proceeding are identical to those in the State Court Lawsuit and the Defendant was one of the defendants therein. Therefore, the determinative factors are whether the issues raised are identical to those raised in this adversary proceeding and whether the issues sought to be precluded were actually litigated. As previously discussed, the State Court Lawsuit is based upon allegations of breach of contract, negligence, misrepresentation, and violations of the Tennessee Consumer Protection Act for engaging in unfair and deceptive acts and practices. The State Court Complaint specifically alleges the same material facts concerning the Jones brothers' conduct and liability, *see* STMT. OF UNDISP. FACTS EX. 1, as does this adversary proceeding wherein the Plaintiffs seek a determination of nondischargeability.

The other factors having been satisfied, the court must finally analyze the issues pled in this adversary proceeding with those pled, actually litigated, and ultimately decided in the State Court Lawsuit and determine if they are, in fact, identical. Under § 523(a)(2)(A), an individual is not discharged from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by [] false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]"  11 U.S.C. § 523(a)(2)(A). The court construes § 523(a) liberally in favor of the Defendant and strictly against the Plaintiffs, who bear the burden of proving the elements necessary for a determination of nondischargeability by a preponderance of the evidence. *Grogan*, 111 S. Ct. at 661; *Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998). In order to satisfy the requirements of § 523(a)(2)(A), the Plaintiffs must prove the Defendant obtained money, property, or services through material misrepresentations that he knew were false or he made with gross recklessness, that the Defendant intended to deceive the Plaintiffs, that they justifiably relied on the Defendant's false representations, and that the Plaintiffs' reliance was the proximate cause of their losses. *McDonald v. Morgan (In re Morgan)*, 415 B.R. 644, 649 (Bankr. E.D. Tenn. 2009).

> "[F]alse pretense" involves implied misrepresentation or conduct intended to create and foster a false impression, as distinguished from a "false representation" which is an express misrepresentation[, while a]ctual fraud "consists of any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another—something said, done or omitted with the design of perpetrating what is known to be a cheat or deception."

*Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 760 (Bankr. E.D. Tenn. 2003) (citations omitted). "[F]alse representations and pretenses encompass statements that falsely purport to depict current or past facts," *Peoples Sec. Fin. Co., Inc. v. Todd (In re Todd)*, 34 B.R. 633, 635 (Bankr.

W.D. Ky. 1983), and fraudulent intent may be "inferred as a matter of fact" based on the totality of the circumstances when the Defendant has engaged in conduct that was somewhat "blameworthy." *Copeland*, 291 B.R. at 759.  Nevertheless, mere negligence or evidence of "[a] 'dumb but honest' [debtor] does not satisfy the test."  *Copeland*, 291 B.R. at 766 (quoting *Palmacci v. Umpierrez*, 121 F.3d 781, 788 (1st Cir. 1997)).  Likewise,

> a broken promise to repay a debt, without more, will not sustain a cause of action under § 523(a)(2)(A).  Instead, central to the concept of fraud is the existence of scienter which, for purposes of § 523(a)(2)(A), requires that it be shown that at the time the debt was incurred, there existed no intent on the part of the debtor to repay the obligation.

*EDM Mach. Sales, Inc. v. Harrison (In re Harrison)*, 301 B.R. 849, 854 (Bankr. N.D. Ohio 2003) (citations omitted); *see also Palmacci*, 121 F.3d at 788 (stating that an honest belief that the representation is true, even if unreasonably so, "is an insufficient basis for deceit.").  The court must also find justifiable reliance; i.e., the party seeking a determination of nondischargeability actually relied on the representations and, based upon the facts and circumstances known at the time, their reliance was justifiable.  *Morgan*, 415 B.R. at 649.  A determination of nondischargeability under § 523(a)(2)(A) often comes down to the defendant's conduct prior to, at the time of, and subsequent to the representations at issue and which witnesses are the most credible.  *Copeland*, 291 B.R. at 766; *Commercial Bank & Trust Co. v. McCoy (In re McCoy)*, 269 B.R. 193, 198 (Bankr. W.D. Tenn. 2001)).  In essence, in order for the court to find the Judgment is a nondischargeable debt under subsection (a)(2)(A), the Plaintiffs must prove fraud in the inducement; i.e., that the Defendant intentionally misled them when he represented that he was bonded, and had he not, they would not have contracted with and paid funds to him.

13

Based upon the record, the Plaintiffs have met their burden of proof.  Although judgments based upon breach of contract and breach of warranty "do not cover the issues required to prove a case under § 523(a)(2)(A)[,]" *Tomlin v. Crownover (In re Crownover)*, 417 B.R. 45, 56 (Bankr. E.D. Tenn. 2009), another aspect of the Judgment was a finding that the Jones brothers violated the Tennessee Consumer Protection Act (TCPA) and an award for damages thereunder.  One of the purposes of the TCPA is "[t]o protect consumers and legitimate business enterprises from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce in part or wholly within this state[.]"  TENN. CODE ANN. § 47-18-102 (2001).  Included within the non-exhaustive acts or practices expressly denoted in the statute as being deceptive is "[e]ngaging in any . . . act or practice which is deceptive to the consumer or to any other person."  TENN. CODE ANN. § 47-18-104(b)(27) (Supp. 2010).  Although "[a] breach of contract or warranty is not in and of itself a deception, misrepresentation or unfairness under the [TCPA]," the facts upon which a breach of contract occurred can serve as the basis for finding a violation.  *Office Furniture & Related Servs., Inc. v. United Constr. Corp.*, 2005 Tenn. App. LEXIS 99, at *14, 2005 WL 378707, at *5 (Tenn. Ct. App. Feb. 16, 2005).

Although the Judgment of the Anderson County Circuit Court itself does not detail the issues litigated, the Judgment and Opinion of the Tennessee Court of Appeals affirming the Judgment does.  On appeal, which was prosecuted by the Defendant and his state court co-defendants, the Tennessee Court of Appeals detailed the facts giving rise to the Judgment in the State Court Lawsuit – which, as previously stated, are identical to those raised herein – and held that the trial court's determination that the Jones brothers willfully and knowingly violated the Tennessee Consumer Protection Act was

supported by the record. Furthermore, the Judgment and Opinion entered by the Tennessee Court of Appeals expressly contains the following findings:

> The Jones brothers contend that insufficient evidence was presented to support the trial court's finding that their violation of the TCPA was willful and knowing. They do not deny that they were not bonded, nor do they deny that they misrepresented to the Andersons that they were bonded and that the Andersons relied upon this misrepresentation. However, the Jones brothers insist that such misrepresentation was unintentional and that the record does not show otherwise. We disagree.
>
> First, we note Jerry Jones's own testimony that prior to their employment by the Andersons, he gave Kimberly Anderson the Jones brothers' business card, a copy of which is in the record before us. Among other things, this card states that the Jones brothers are "Licensed, Insured, and Bonded." (Emphasis added). Jerry Jones's testimony indicates that although he knew at the time that the bonding information on the card was inaccurate, he did not inform Kimberly Anderson of this and instead, merely advised her that the telephone numbers on the card were incorrect:
>
>> Q: [Y]ou gave her your card?
>>
>> A. Yes.
>>
>> Q. That says you are bonded?
>>
>> A. I told her the card was a mistake. That I'll re-write the numbers on it so you can have our numbers to contact us.
>>
>> Q: The mistakes you were telling her was the phone numbers, isn't that right?
>>
>> A: Yes.
>>
>> Q: You didn't say anything about the bond or lack of a bond being a mistake?
>>
>> A: I didn't say anything about even any insurance at the time.
>
> We believe that under circumstances wherein the card's inaccuracies were the subject of discussion, it would have been natural to apprise the customer that the bonding information was inaccurate given the importance of that information. We believe the

15

fact that this was not done is indicative of an intent to deceive. However, more direct proof that the Jones brothers intentionally concealed the fact that they were not bonded is provided by the following testimony of Kimberly Anderson:

> Q: . . . . You received the [Jones brothers's business] card at the beginning of the negotiations?
>
> A: Yes.
>
> Q: Did you believe them to be bonded?
>
> A: Yes.
>
> Q: Did you ask them if they were bonded?
>
> A: Yes.
>
> Q: Tell me who said what.
>
> A: *I believe it was both Terry and Jerry said that they were licensed, bonded and insured. And Todd later discussed it in a January meeting that they were licensed and bonded.*
>
> Q: Would you have entered into this contract if you knew they were not bonded?
>
> A: Absolutely not.

(Emphasis added).

Mr. Anderson's testimony also indicates that the Jones brothers intentionally concealed the fact that they were not bonded:

> Q: Did you ever ask the Jones brothers to see any documentation about a bond or their bond?
>
> A: Yes, I did. When a crack formed in the north wall of the house and I saw that the house was separating, I told Jerry [Jones], I said, we are going to have to take care of this. He said, our insurance will cover this. Just wait. No, I said, you need your bonding company on this, this is bigger than a slight crack in the house, the foundation is giving way.
>
> Q: Did he produce a bond or any documentation?

> A: Oh, we will get with it, we'll get with it. He would always say that and then it would be passed to other ones to make an excuse.
>
> Q: Did you ever receive a bond?
>
> A: No, sir, I didn't.
>
> All of the above cited testimony constitutes sufficient evidence to support the conclusion that the Jones brothers's [sic] violation of the TCPA was willful and knowing, and their argument to the contrary is of no merit.

STMT. OF UNDISP. MAT. FACTS Ex. 4 at 12-14; .STMT. OF UNDISP. MAT. FACTS at ¶ 16; RESP. TO STMT. OF UNDISP. MAT. FACTS at ¶ 16. As evidenced in the Judgment and Opinion, the Tennessee Court of Appeals agreed with the trial court that the Defendant and his state court co-defendants intentionally and knowingly made material misrepresentations that the Plaintiffs justifiably relied on to their detriment, which in turn satisfies each of the elements of § 523(a)(2)(A).

Because the Judgment, as affirmed by the Tennessee Court of Appeals on May 16, 2008, fully determined the issue of whether the Defendant obtained money from the Plaintiffs through material misrepresentations made knowingly and with an intent to deceive, justifiably relied upon by the Plaintiffs to their detriment, it is entitled to preclusive effect, and the Plaintiffs are entitled to summary judgment as a matter of law that the Judgment is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

A Judgment consistent with this Memorandum will be entered.

FILED: January 21, 2011

               BY THE COURT

               */s/ RICHARD STAIR, JR.*

               RICHARD STAIR, JR.
               UNITED STATES BANKRUPTCY JUDGE